**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| CHRISTIAN SANCHEZ, on behalf of himself and all others similarly situated, | : | Civil Case No.: 1:21-cv-2598 (KPF) |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | ORAL ARGUMENT REQUESTED |
| | : | |
| WELCOME SKATEBOARDS, INC., | : | |
| | : | |
| Defendant, | : | |
| | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
**<u>MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

**Pages**

I.    INTRODUCTION……………….……………………………………………..1

II.   PROCEDURAL HISTORY……………………………………...………3

III.  STATEMENT OF FACTS…………………………………………………..4

IV.  LEGAL STANDARDS…..………………………………………………..7

    A.  Standards of Evaluating a FED. R. CIV. P. 12(B)(1) Challenge
    B.  The Use of Extrinsic Evidence in Deciding a Rule 12(B)(1) Motion to Dismiss
    C.  Article III Standing
    D.  Mootness
    E.  Standards of Evaluating a FED. R. CIV. P. 12(B)(6) Challenge

V.   ARGUMENT………………………………………………………………… 11

    A.    <mark>This Court Has Subject Matter Jurisdiction in this Case</mark>

      i.  Extrinsic Evidence in a rule 12(b)(1) Motion to Dismiss

      ii.  Plaintiff Has Established an Injury in Fact

      iii.  Plaintiff has Properly Pleaded a Future Injury

      iv.  Plaintiff's Claims Are Not Moot

    B.    Plaintiff Has Stated a Claim Under the ADA Regardless of Auxiliary Services

VI.  CONCLUSION……………………………………………...………………… 26

## <u>TABLE OF AUTHORITIES</u>

<u>Pages</u>

**Cases**

*A.I. Trade Fin., Inc., v. Petra Bank*, 989 F.2d 76 (2d Cir. 1993)..........................................

**Statutes**

    42 U.S.C. § 12181 *et seq.* ................................................................................ *passim*

    N.Y.C. Admin. Code § 8-101 *et seq.*, ………………………………………… 7, 11

 **Rules**

    Fed. R. Civ. P.  12(b)(1), 12(b)(6), 56............................................................. *passim*

Plaintiff Cristian Sanchez ("Plaintiff") respectfully submits this memorandum of law in opposition to defendant Welcome Skateboards Inc.'s ("Defendant") motion to dismiss ("Motion to Dismiss").

## I.    __INTRODUCTION__

The First Amended Class Action Complaint ("FACAC")[1] properly pleads violations of the Americans with Disabilities Act ("ADA") and the New York City Human Rights Law ("NYCHRL"). Defendant's Motion to Dismiss does not set forth appropriate grounds for dismissal.[2]

This Motion to Dismiss should be denied in its entirety as it argues propositions that were recently decided in the Southern District of New York in an ADA website accessibility. *See Jaquez v. Dermpoint*, 20-CV-7589 (JPO), 2021 U.S. Dist. LEXIS 96067 (S.D.N.Y. May 20, 2021).  The Court held in *Jaquez* that an ADA website-accessibility complaint need not "contain detailed factual allegations" to survive a motion to dismiss. *Id.* at *4. Indeed, the *Jaquez* Court specifically noted that deficient website features form a pleading sufficient to properly state an injury. The features specifically noted by the court in *Jaquez* included: (i) failure to describe the contents of graphical images; (ii) failure to properly label titles; (iii) failure distinguish one page from another; (iv) and inability to add items to the online shopping cart; *See Id.* at *4-*5. This ruling confirms

---

[1]      "¶__" means a citation to paragraph numbers in First Amended Class Action Complaint. "Def. Mem." refers to Defendant's Memorandum of Law in Support of Defendant's Motion to Dismiss (ECF No. 21). "Def. Ex. 1" refers to the Declaration of Jason Celaya submitted in support of Defendant's Motion to Dismiss, dated August 3, 2021 (ECF No. 22). "Def Ex. 2" refers to the Declaration of Shir Ekron submitted in support of Defendant's Motion to Dismiss, dated August 3, 2021 (ECF No. 23).

[2]      Defendant repeatedly attempts to malign Plaintiff by noting the number of ADA cases filed by Plaintiff. *See, e.g.*, Def. Mem. at *1. Courts, including this one, have routinely found nothing wrong with the filing of numerous lawsuits against defendants so long as the harms to be remedied actually exist. *See, e.g., Camacho v. Vanderbilt Univ.*, 18 Civ. 10694 (KPF), 2019 U.S. Dist. LEXIS 209202 at *29 (S.D.N.Y. Dec. 4, 2019).  Contrary to Defendant's apparent intent, these ad hominem attacks do not damage the integrity of this action.  In *Jaquez v. Dermpoint*, defendant also alluded in its failed motion to dismiss that plaintiff "filed numerous nearly identical lawsuits against other businesses." No. 1:20cv7589 (S.D.N.Y. Jan. 19, 2021), ECF. No. 14.)

the standard for pleading an injury in an ADA website case which this Court already established in *Camacho v. Vanderbilt*. There, this court held in that case that a plaintiff properly states a concrete injury when they identify a website function that they were unable to use, and which deters them from accessing the site. 2019 U.S. Dist. LEXIS 209202 at \*26.

The FACAC specifically includes many of the same problems this Court has found sufficient in *Camacho*, as confirmed by *Jaquez* to plead an injury under the ADA. Specifically, the FACAC pleads that the Website contained links that lacked a proper description, site elements, such as product offers, product payment plans, prices, and size charts, that were not labeled to integrate with the screen reader, and that the Website does not indicate that an item was added to a user's cart function, inhibiting visually-impaired users from determining what they are purchasing. ¶28. This is further supported by the recent holding of Judge Schofield in the case of *Quezada v. Weby Corp*., No. 1:20-cv-10700 (S.D.N.Y. June 17, 2021) regarding details added to an amended complaint.

> [W]e have your ADA claim, and there was a prior pre-motion letter and a complaint that there wasn't sufficient detail. The plaintiff has now amended the complaint, added some more detail, and it seems to me, from looking at the complaint, that it is sufficient. If we get down into the details, one of the objections is that the complaint fails to identify any particular web page or component of defendant's website where there are barriers to accessibility. I did note that the first amended complaint identifies accessibility issues on a few specific pages, which I think is sufficient, at least the pages containing the products in the class of hunting or tactical gear and also the pages for each individual product. \* \* \* So I'm, obviously, not ruling on your motion, but what I'm saying is it's pretty clear to me that the motion would not dispose of the case, and so I would urge the defendant not to file it. " *Id*. Docket No. 37, pp. 2:14-3:1; 5:3-6. A true and correct copy of the transcript is enclosed herewith as Exhibit A.

Given the similarity of these barriers pled in the FACAC to those this Court held to adequately pled injury in *Camacho*, *Jaquez* and *Weby*, Defendant's motion should not stand.

Similarly, Defendant's unsupported assertions concerning alleged remedial measures do not moot this case. By contrast, Plaintiff has satisfied the threshold for standing – the FACAC clearly alleges that: (i) Plaintiff suffered an injury when he was unable to transact business on the Defendant's Website; and ii) Plaintiff intends on returning to Defendant's website to attempt to conduct a transaction once the access barriers have been cured. Plaintiff has properly pled that these issues are ongoing and has demonstrated the same by way of expert affidavit evidence.

Furthermore, Defendant's arguments in support of mootness rely on declaratory evidence extrinsic to the FACAC. The Court should not give this evidence any weight, as: (i) discovery has not yet commenced in this matter; (ii) Plaintiff's pleadings directly contradict Defendant's extrinsic evidence; and (iii) Plaintiff's competing expert declaration demonstrates the ongoing existence of access barriers on Defendant's website. It is likewise inappropriate under Rule 12(b)(6) to consider extrinsic evidence in a motion to dismiss, such as the affidavits Defendant has submitted here. *Jaquez*, 2021 U.S. Dist. LEXIS 96067, at *6. As such, these documents should be given no weight by the Court regarding any part of Plaintiff's motion.

Accordingly, Defendant's Motion to Dismiss should respectfully be denied in its entirety.

## II.    <u>PROCEDURAL HISTORY</u>

On March 25, 2021, Plaintiff filed the initial complaint in this action. ECF No. 1. Thereafter, Defendant filed a letter motion for leave to file a motion to dismiss the initial Complaint on May 28, 2021. ECF No. 9. Plaintiff responded in a letter on June 3, 2021, denying the basis for Defendant's proposed motion and requesting leave to file the FACAC, which was granted by this Court. ECF Nos. 10-11. Plaintiff then filed the FACAC on June 17, 2021. ECF No. 12. Thereafter, Defendant filed a letter motion for a proposed motion to dismiss on July 1, 2021. ECF No. 13.

Following a pre-trial conference on June 8, 2021, this Court ordered that Defendant was to submit a motion to dismiss by August 6, 2021. Defendant did so on August 4, 2021. ECF No. 20.

## III.    <u>STATEMENT OF FACTS</u>

Defendant is a skateboard and clothing company that owns and operates, the website, www.welcomeskateboards.com (its "Website"). ¶23.   The Website offers goods for sale to consumers include, but are not limited to, skateboards and apparel, for purchase and delivery. ¶24.

Plaintiff is a visually impaired and legally blind person who requires the use of screen-reading software in order to read website content using his personal computer. ¶¶1, 14. Plaintiff made several visits to the Website beginning on March 25, 2021, until at least June 1, 2021. ¶27. Plaintiff browsed and attempted to transact business on Defendant's Website by way of, *inter alia*: (i) purchasing a skateboard for his nephew; and (ii) understanding the different product details for the products offered on the Website in order to complete a purchase by, for instance, listening to audio descriptions of the images on the Website.  ¶4.  Plaintiff was unable to successfully do the following things because the Website was not compliant with the current ADA accessibility standards and contained/contains specific issues both at the time Plaintiff browsed the Website and as of the date of the filing of the FACAC. ¶¶4, 27. Plaintiff encountered multiple access barriers that denied Plaintiff full and equal access to the services offered to the general public on the Website. ¶28. These barriers include, without limitation (collectively, the "Access Barriers"):

- The Website did/does not allow the visually-impaired – and did not permit Plaintiff – to properly transact business and understand the "shopping bag" or "cart" feature, which serves as the only way to purchase products, because it does not indicate whether items were added to the "cart" function. This impedes Plaintiff from determining what

items and how many of any given item he has actually selected for purchase from the Website.

- A pop-up offering 15% off a customer's first order is not labeled to integrate with the screen reader. The text providing the promotion is not accessible, thus, barring the user from knowing what the information they are prompted to enter, such as name and email, is for. Plaintiff was thus unable to accurately compare prices of Defendant's goods and take advantage of the promotion as a sighted New York resident.

- Site elements such as product price and the payment plan offered by the Website are not labeled to integrate with the screen reader. The information is not accessible and skips to the "add to cart" option. This issue bars the user from knowing the cost of the product and the possible payment plans available to decide if they wish to take advantage of this function relative to other vendors.

- Products are offered on the website in different sizes, but the size option function and the size chart are not labeled to integrate with the screen reader. Only the first size option is made accessible. The size chart is not accessible. Visually-impaired users cannot therefore determine if a product is available in a desired size.

- The page to check an item's size does not indicate whether that item is sold out and does not direct the user back to the option to choose a size. Visually-impaired users therefore cannot use this function to make an informed choice regarding Defendant's available products.

- The logo found on this site, which acts as a link to the homepage, is not labeled and cannot therefore be interpreted by any screen reader as to what the graphic represents

5

nor the underlying purpose of creating a way to return to the site's homepage. This causes delays in navigating the Website that do not affect sighted users.

- The page which provides a guide for the skateboards offered by Defendant does not read the specifications of the various skateboards. The impedes Plaintiff's ability to make an informed decision as to which skateboard would best suit his nephew. ¶28.

Additionally, Plaintiff's expert, Robert Moody, has confirmed that the Website still suffered from significant access barriers as of August 25, 2021, several weeks after the instant motion to dismiss was filed. *See* Declaration of Robert D. Moody ("Moody Decl.") at ¶¶7-8, a true and correct copy of which is annexed hereto as <u>Exhibit B</u>. Mr. Moody's report also exampled the tools contained in the Defendants "ADA Accessibility Widget" and determined that the accessibility issues persist despite this tool. Exhibit B at ¶¶9-11.

While Plaintiff was denied equal access to the Website, Plaintiff remains hopeful that the Access Barriers will be cured, as he intends to return to the Website in order to purchase a skateboard for his nephew as soon as the Accessibility Barriers are cured. ¶29. Based on these allegations, the FACAC adequately alleges: (i) Defendant's violations of 42 U.S.C. § 12181 *et seq.* – Title III of the ADA; and (ii) the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101, *et seq.* (the "NYCHRL").

## IV.    <u>LEGAL STANDARDS</u>

The Second Circuit cautions courts from prematurely dismissing complaints of civil rights violations. *See Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir. 2001). "As a remedial statute, the ADA must be broadly construed to effectuate its purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Noel v. New York City Taxi and Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012).

### A.  STANDARDS WHEN EVALUATING A FED. R. CIV. P. 12(B)(1) CHALLENGE

When examining a Fed. R. Civ. P. 12(b)(1) motion, a court must "take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively." *Bassaw v. United Indus. Corp.*, No. 19-CV-7759 (JMF), 2020 U.S. Dist. LEXIS 157800, at *4 (S.D.N.Y. Aug. 31, 2020) (internal citations omitted). The burden of providing subject matter jurisdiction by a preponderance of the evidence is borne by the Plaintiff. *Id.* The Southern District of New York recently held in an ADA website accessibility case that a complaint need not contain detailed factual allegations to survive a motion to dismiss. *Jaquez*, 2021 U.S. Dist. LEXIS 96067, at *4.

### B.  THE USE OF EXTRINSIC EVIDENCE IN DECIDING A RULE 12(B)(1) MOTION TO DISMISS

"In resolving a Rule 12(b)(1) motion, a district court may refer to evidence outside the pleadings." *Wilson v. HSBC Bank, USA*, No. 19-920-cv, 2020 U.S. App. LEXIS 34265, at *2 (2d Cir. Oct. 29, 2020) (citations omitted). However, where the 12(b)(1) challenge to jurisdiction "is 'so intertwined with the merits that its resolution depends on the resolution of the merits,' the court should use the standard 'applicable to a motion for summary judgment' and dismiss only where 'no triable issues of fact' exist." *Takeda Chem. Indus. v. Watson Pharm., Inc.*, 329 F. Supp. 2d 394, 402 (S.D.N.Y. 2004) (*citing London v. Polishook*, 189 F.3d 196, 198-99 (2d Cir. 1999)); *see also Evans v. SSN Funding, L.P.*, 2017 U.S. Dist. LEXIS 135864, at *15-16 (S.D.N.Y. Aug. 23, 2017) (holding same).

The overlap of evidence submitted in support of a Rule 12(b)(1) motion "is such that fact-finding on the jurisdictional issue will adjudicate factual issues required by the Seventh Amendment to be resolved by a jury, then the Court must leave the jurisdictional issue for the

trial." *All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 (2d Cir. 2006); *see also Dorchester Fin. Sec, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 87 (2d Cir. 2013).[3]

### C.  ARTICLE III STANDING

An injury sufficient to support Article III standing is established when "a plaintiff [] show[s] that he suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016). "An injury is particularized when it affect[s] the plaintiff in a personal and individual way. . . [a]n injury is concrete when it actually exists or, put another way, when it is real rather than abstract. Notably, this is a low threshold, and the plaintiff need not be capable of sustaining a valid cause of action." *Bassaw*, 2020 U.S. Dist. LEXIS 157800, at *6. Applying this standard to ADA cases specifically, the Second Circuit held that "a plaintiff has standing in an ADA suit seeking injunctive relief where 1) the plaintiff alleged past injury under the ADA; 2) it was reasonable to infer that the discriminatory treatment would continue; and 3) it was reasonable to infer. . . that [the] plaintiff intended to return to the subject location." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187-88 (2d. Cir. 2013).

### D.  MOOTNESS

"The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed." *Knox v. Serv. Emp. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012). The Second Circuit utilizes a two-part test in determining whether a defendant's conduct has rendered

---

[3]    This case should go to a jury, as the state law claims demand jury adjudication. *Phillips v. 180 Bklyn Livingston, LLC*, 2017 U.S. Dist. LEXIS 75154, at *6 (E.D.N.Y. May 16, 2017) (where plaintiff filed claims under Title III of the ADA, and the New York City Human Rights Law ('NYCHRL'). "First, as a practical matter, the ADA does not provide for a jury trial, whereas the state and city claims do. The preparation of a case for a jury trial requires far more resources than a trial being put to a judge alone.")

a case moot. The defendant must demonstrate that: "(1) there is no reasonable expectation that the alleged violation will recur; and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Sullivan v. Study.com LLC*, No. 18 Civ. 1939 (JPO), 2019 U.S. Dist. LEXIS 47073 at \*17 (S.D.N.Y. Mar. 21, 2019); *see also Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 110 (2d Cir. 2010) (*quoting Campbell v. Greisberger*, 80 F.3d 703, 706 (2d Cir. 1996)).  Specifically, where noncompliance can result from an easily changeable policy, a court cannot simply say that a defendant has made an affirmative showing that the continuation of their alleged ADA violations is nearly impossible. *See De La Rosa v. 600 Broadway Partners, LLC*, 175 F. Supp. 3d 191, 201 (S.D.N.Y. 2016) (internal citations omitted). Additionally, when claiming that a request for injunctive relief has been mooted, a defendant takes on the formidable burden of demonstrating that it is absolutely clear the alleged wrongful behavior could not reasonably be expected to recur." *Mercer v Jericho Hotels, LLC*, 19-CV-5604 (VSB) 2019 U.S. Dist. LEXIS 199897, at \*7 (Nov. 18, 2019), quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189, (2000).

### E.  STANDARDS WHEN EVALUATING A FED. R. CIV. P. 12(B)(6) CHALLENGE

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Jaquez*, 20-CV-7589 (JPO), at \*4 (S.D.N.Y. May 2020) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Such facial plausibility is properly presented when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (*citing Twombly*, 550 U.S. at 556).  All reasonable inferences are drawn in the plaintiff's favor. *Id*. The court's review is "limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits and any documents incorporated in the complaint

by reference." *Id.* at *6. To survive dismissal, "the plaintiff must provide the grounds upon which his claims rest through factual allegations sufficient to raise a right to relief above the speculative level." *Lanier v. Bats Exch., Inc*., 838 F.3d 139, 150 (2d Cir. 2016) (citations omitted).

## V.    ARGUMENT

### A.  THIS COURT HAS SUBJECT MATTER JURISDICTION IN THIS CASE

#### i.    Extrinsic Evidence in a Rule 12(b)(1) Motion to Dismiss

Examining extrinsic evidence is limited under Rule 12(b)(1) where a challenge to jurisdiction "is so intertwined with the merits that its resolution depends on the resolution of the merits." *Takeda Chem. Indus. v. Watson Pharm., Inc.*, 329 F. Supp. 2d 394, 402 (S.D.N.Y. 2004) (citation omitted). Under those circumstances, the court treats the motion as one for summary judgment and dismisses only where no triable issues of fact exist. *Id.* The very merits of this case rest on whether the Access Barriers existed when Plaintiff attempted to access the Website between March and June 2021 and/or still exist currently.  By challenging these allegations to attack subject matter jurisdiction, Defendant has inextricably intertwined its jurisdictional challenge with the merits of the case.  As fact-finding on these jurisdictional issues will necessarily adjudicate the factual issues constituting the crux of Plaintiff's claims, which the Seventh Amendment requires a jury to resolve,[4] the Court should leave the jurisdictional issues for trial.  *See All. for Envtl. Renewal, Inc.* 436 F.3d at 88); *see also Aguilar v. Immigration & Customs Enf't Div. of the United States Dep't of Homeland Sec*., 811 F. Supp. 2d 803, 822 (S.D.N.Y. 2011); *Broidy Capital Mgmt. LLC v. Benomar*, 944 F.3d 436, 444 n.7 (2d Cir. 2019). To require Plaintiff to prove additional factual allegations regarding the substantive merits of the case would untenably place Plaintiff in

---

[4]     This case should go to a jury, as the state law claim demands jury adjudication. Under NYC Administrative Code 8-502, any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of competent jurisdiction for damages. Trial by jury is likewise guaranteed for all such city and state laws under Article 1§2 of the Constitution of the State of New York, unless waived by the parties.

the situation of having to prove his case before the Defendant has even answered the complaint or produced any discovery. Indeed, in the recent case of *Jaquez*, the Court refused to consider matters outside of the pleadings or directly convert that matter into a motion for summary judgement, inviting the party to file a separate motion at a later juncture. *Jaquez*, 20-CV-7589 (JPO) at *6, fn.1 (S.D.N.Y. May 2020). This approach, that a factual dispute concerning the accessibility of a website is "properly tested in discovery and at summary judgment or trail" was also upheld by Judge Furman when denying a motion to dismiss in the recent case of *Josue Romero v Adagio Teas, Inc*., (20-CV 7422) (JMF), (S.D.N.Y July 7, 2021). A copy of this ruling is annexed hereto as Exhibit C.

The merits of this case rest on such a factual dispute: whether Access Barriers existed when Plaintiff used the Website. Defendant's evidence that the Website is accessible sounds in Rule 12(b)(6), rather than 12(b)(1), because Defendant has interwoven its jurisdictional challenge with the case's merits to plead untested counter-allegations. These counter-allegations are the basis of its motion to dismiss. Below are illustrative examples:

| Assertions of Def. Mem. based on extrinsic evidence | Allegations in the Amended Complaint |
|---|---|
| "accessiBe ensures that the shopping cart is coded with screen-reader only text, which indicates when items are added to the cart (Def. Ex 2. ¶ 28.)" Def. Mem. at *16. | "[T]he Website did/does not allow the visually-impaired – and did not permit Plaintiff – to properly transact business and understand the "shopping bag" or "cart" feature, which serves as the only way to purchase products, because it does not indicate whether items were added to the "cart" function." ¶28(a). |

| | |
|---|---|
| "The popup has live HTML text which has been coded into the site. From the user's perspective, live text can be highlighted, copied and pasted just like text from a Word document" Def. Mem. at *17 (citing Def. Ex. 2 at ¶30). | "A pop-up offering 15% off a customer's first order is not labeled to integrate with the screen reader. The text providing the promotion is not accessible, thus, barring the user from knowing what the information they are prompted to enter, such as name and email, is for. Plaintiff was thus unable to accurately compare prices of Defendant's goods and take advantage of the promotion as a sighted New York resident." ¶28(b). |
| "Product price is provided in live text, which is directly accessible for screen reader users and negates the need for any labeling." Def. Mem at 18, (citing Def. Ex. 3 at ¶ 32) | "Site elements such as product price and the payment plan offered by the Website are not labeled to integrate with the screen reader." ¶28(c). |
| "The logo is fully aria-labeled as "home" for Screen Readers. . . the aria-label make the purpose of this logo very clear." Def. Mem. at *18, citing Def. Ex 2 at ¶¶38-39 | "The logo found on this site, which acts as a link to the homepage, is not labeled and cannot therefore be interpreted by any screen reader as to what the graphic represents nor the underlying purpose of creating a way to return to the site's homepage. This causes delays in navigating the Website that do not affect sighted users" ¶28(f). |

Since discovery has not been conducted, the use of extrinsic evidence should be limited or judged under the standards of Rule 56. Defendant should be able to present the assertions of its witnesses for evaluation only after Plaintiff has had the opportunity to scrutinize and potentially rebut such evidence. At this stage, Defendant's extrinsic evidence, including the conclusions of the Celaya and Ekron statements, are a set of conclusory counter allegations that do not eliminate the material issues of this case. Under either framework, this extrinsic evidence should be disregarded by the Court.

**ii.** <u>Plaintiff Has Established an Injury in Fact</u>

Plaintiff has properly pleaded that he encountered Access Barriers that prevented him from transacting business on the Website. ¶¶4, 24. Encountering such barriers effectively denied

Plaintiff the ability to enjoy the privileges of Defendant's website, a public accommodation. ¶28. While Defendant claims that "Plaintiff does not provide any specific dates of when he purportedly tried to navigate the Website", this is a misreading of the FACAC. Def. Mem. at *3. The FACAC clearly states that Plaintiff visited the Website at least twice, on March 25, 2021, and June 1, 2021. ¶27. The FACAC further lays out the specific website functions that prevented Plaintiff from completing a purchase as a sited person would, including: the "shopping bag" or "cart feature", the size option function, the page to check an items size, and the page which provides a guide for skateboards offered by Defendant. ¶¶28(a);28(d);28(e);28(g). These specific functions and deficient pages directly prevented Plaintiff from completing a purchase in a manner which would otherwise be available to sighted individuals. ¶¶4, 31.

These barriers are exactly the type that already been held to sufficiently plead a present injury under the ADA by this very Court. In *Camacho v. Vanderbilt*, this Court held that the plaintiff had plead a concrete injury where:

> Plaintiff claims that he suffered an injury under the ADA when he was unable to access certain portions of the Website's publicly available content because of his disability. Specifically, Plaintiff states that he was unable to navigate the Website because its navigation tabs were incompatible with his screen-reading software, and unable to utilize the Website's net price calculator because that page was also incompatible with his screen-reading software. Plaintiff has also alleged that the Website's access barriers regularly deter him from accessing the website. The Second Circuit has made clear that "deterrence constitutes an injury under the ADA."

*Camacho*, 2019 U.S. Dist. LEXIS 209202 at *26. In this case, the FACAC pleads that Plaintiff suffered the injury of being deterred from using the Website because of access barriers in no less than three places. ¶¶11; 30-31.

Likewise, particular accessibility issues preventing a plaintiff from making an informed choice are a real injury and threat of future harm recognized in a proper pleading. *See Harty v. W.*

13

*Point Realty, Inc.*, 477 F. Supp. 3d 163, 169-170 (S.D.N.Y. 2020). The FACAC pleads this type

of injury in two specific places. ¶28(e); 28(g). Additionally, plaintiffs may properly plead they

suffer an injury under the ADA resulting from unequal treatment when barriers render their use of

a public accommodation more difficult or burdensome than for non-disabled individuals.

Similarly, the Southern District has previously held that deficiencies on a website, such as a failure

to "describe the contents of graphical images, properly label title[s]… distinguish one page from

another and that it contains multiple broken links and inaccurate headings" is sufficient to plead a

via ADA claim of discrimination for denial of full and equal treatment. *Jaquez*, 2021 U.S. Dist.

LEXIS 96067, at *4-*5. Similarly, in *Juscinska v. Paper Factory Hotel, LLC*, the court there

rejected a motion to dismiss where:

> [A]s alleged in the Complaint, Plaintiff was not able to browse Defendant's website
> and make a reservation with the same efficiency, immediacy, and convenience as
> those who do not need accessible guest rooms. Plaintiff was unable to discern the
> accessible features of rooms that would meet her needs. Defendant's website did
> not provide Plaintiff with the opportunity to evaluate the suitability of common
> areas and the amenities Defendant provides to its guests. Taking the facts in the
> Complaint as true, it is plausible that, at the time Plaintiff visited Defendant's
> website, it was not compliant with the ADA as interpreted by the DOJ.

*Juscinska v. Paper Factory Hotel, LLC*, 18-cv-8201 (ALC), 2019 U.S. Dist. LEXIS 92550,

at *8-*9 (S.D.N.Y., Jun. 3, 2019). Plaintiffs are also held to suffer the injury of unequal treatment

under the ADA when barriers render their use of a public accommodation more difficult or

burdensome than for non-disabled individuals. *See, e.g.*, *Feltenstein v. City of New Rochelle*, 254

F. Supp. 3d 647, 655 (S.D.N.Y. 2017). The FACAC notes this exact type of injury, noting that

barriers surrounding the site logo "cause[] delays in navigating the Website that do not affect

sighted users." ¶28(f).

Here, Plaintiff specifically identified how he attempted to browse Defendant's Website and

complete a transaction but was unable to because of specific website functions that were

incompatible with his screen-reading software. ¶28. Plaintiff also pleaded that the Access Barriers continuously deter Plaintiff from visiting the Website, presently and in the future. ¶30. This is in direct contrast to the authority cited by Defendant, where the plaintiff did not even detail which business he had patronized. *Cf. Feltzin v. Triangle Props. #1, LLC*, 14-cv-5131 (JMA) (ARL), 2016 U.S. Dist. LEXIS 192861, at *15 (E.D.N.Y., Dec. 15, 2016); Def. Mem. at *14-*15. Plaintiff has thus specified times he visited the site, the specific website functions he could not access, and how this prevented him from completing transactions. From these facts, Plaintiff passes the "low threshold" for standing.

### iii.    Plaintiff has Properly Pleaded a Future Injury.

Contrary to Defendant's arguments, Plaintiff has established a threat of future injury. The threshold for a threat of future injury is passed when a plaintiff alleges that particular accessibility issues prevented them from making informed choices. *See Harty v. W. Point Realty, Inc.,* 47 F.Supp. 3d 163, 169-170 (S.D.N.Y. 2020) (*citing Camacho*, 2019 U.S. Dist. LEXIS 209202, at *10).

This Court's ruling in *Camacho v. Vanderbilt,* which Defendant's motion glosses over, is instructive on this point. In that case, this Court found that do plead a future injury, a plaintiff must establish they (i), tried to visit the Website on multiple occasions; (ii) has a stated motivation for returning to visit the Website in the future; and (iii) may easily return to the Website should it be made accessible." 2019 U.S. Dist. Lexis 209202, at *29. All three criteria are met in this case. Plaintiff visited the Website multiple times, beginning on March 25, and continuing at least until June 1, 2021. ¶27. Plaintiff has properly pleaded a motivation for returning to the Website, "Plaintiff was highly interested in purchasing of the skateboards offered by Defendant for his nephew." ¶28. Finally, Plaintiff has properly pleaded that he may easily return to the Website as

soon as the accessibility barriers are cured. *Id.* The FACAC therefore conforms to this Court's own pleading standard as set forth in *Camacho*.

Likewise, in the *Kreisler* case, the Court found that the plaintiff had standing to sue a restaurant for ADA violations based on pleadings that the plaintiff had suffered an ongoing injury when he had been deterred by barriers making the diner inaccessible, and that plaintiff had plead a reasonable inference that he would visit the facility if the violation were remedied. *Kreisler*, 731 F.3d at 188.[5] As in *Kreisler*, the FACAC pleads that Plaintiff would return to complete his purchase of a skateboard for his nephew as soon as the Access Barriers are cured. ¶29. Defendant does not contend with the actual content of the pleading in *Camacho* or *Kreisler*, merely stating that "Plaintiff has failed to identify any issues" and "[Defendant] has ensured that the barrier identified in the FAC no longer exist, and that no additional barriers exist." Def Mem. at *15; *21. However, these conclusory statements, based on extrinsic evidence, do not address the fact that the FACAC properly pleads an ongoing future injury as specifically laid out by the Second Circuit and this very Court. Having failed to show Plaintiff did not plead present and future injuries properly, Defendant must instead resort to arguing that the case has been mooted.

**iv.**    Plaintiff's Claims Are Not Moot

This case is not moot due to the credible allegations of continuing inaccessibility of the Website contained in the FACAC and credibly supported by an expert affidavit. By contrast, Defendant's bald assertions that Defendant "maintains an accessible website and had done so before Plaintiff's lawsuit" based on extrinsic evidence, including a witness from non-party accessiBe, (Def. Mem at *2) are not sufficient to moot a case.

---

[5]    Likewise, "a plausible intention or desires to return does not require a specific date for the plaintiff's return to the ... Website. . . [accordingly, the] [p]laintiff's statements that he would return to the website in the future to assess whether he could make a reservation are sufficient to confer standing." *Monge v. 405 Hotel LLC*, No. 19-CV-0451 (SJF) (ARL), 2021 U.S. Dist. LEXIS 36039, at *17 (E.D.N.Y. Feb. 24, 2021).

Per the case of *Wu v. Jensen-Lewis Co.*, 345 F. Supp. 3d 438, 441-42 (S.D.N.Y. 2018), "[a] case becomes moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome…. [a] defendant cannot…  automatically moot a case by voluntarily ending the unlawful conduct alleged in a plaintiff's complaint."  *Id.* (*citing Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91, 133 S. Ct. 721 (2013)).  Under the ADA, requests for injunctive relief will be deemed moot only "if the defendant meets the 'formidable burden' of demonstrating that it is 'absolutely clear the alleged wrongful behavior could not reasonably be expected to recur.'"  *Id.*  (*citing Friends of the Earth, Inc.*, 528 U.S. at 190.) This is necessary, as "[o]therwise, upon dismissal a defendant could simply resume its conduct." *Id.* (*citing Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298, 307, 132 S. Ct. 2277 (2012)). The court found that the *Wu* defendant, who had designed a completely new website and asserted it was compliant, did not demonstrate that the issue was moot absent further proof. *Id.* at 441.

As in *Wu*, Defendant here cannot conclusively establish that the "wrongful behavior" has permanently ceased.  Nor can it show there is no threat of future injury.  As demonstrated by the Moody Declaration, ***barriers to access continue to persist*** even after the filing of the instant Motion to Dismiss. Thus, the Moody Declaration establishes that Plaintiff's claims are plausible. *See Sullivan v. Study.com LLC*, No. 18 Civ. 1939 (JPO), 2019 U.S. Dist. LEXIS 47073 (S.D.N.Y. Mar. 21, 2019) (rejecting mootness argument where plaintiff identified continued barriers to accessing certain videos on defendant's website); *Del-Orden v. Bonobos, Inc.*, No. 17 Civ. 2744 (PAE), 2017 U.S. Dist. LEXIS 209251 (S.D.N.Y. Dec. 20, 2017) (holding same, where complaint alleged, and court's review of website confirmed, at least one continued barrier to access). Given that Plaintiff has pleaded ongoing violations, Defendant has not sufficiently met its burden of establishing that the alleged barriers have been remedied and would not occur again. Rather,

Defendant states, with minimal support, that its Website is now compliant with WCAG 2.1 Guidelines. Def Mem. at *2. Defendant's assertions of compliance rely on the alleged findings of a non-party and the use of online tools to allegedly check website accessibility and maintain compliance which "addresses all of the barriers alleged in the FAC". Def Mem. at *5; Def. Ex. 1 at ¶5. However, none of the facts put forth by Defendant were subjected to the rigors of discovery or cross examination.

In this light, Defendant's reliance on this Court's rulings in factually distinct cases is particularly unavailing. For example, in *Diaz v Kroger Co.*, the defendant presented evidence that the website had been remediated, which was not contested by the plaintiff. Case No., 18-cv-7953 (KPF), 2019 U.S. Dist. LEXIS 93177 (S.D.N.Y. June 4, 2019), cited at Def. Mem. *5; *21. Defendant's expert was likewise uncontested in *Guglielmo v. Neb. Furniture Mart, Inc.* 19 Civ 11197 (KPF), 2020 U.S. Dist. LEXIS 238707 (S.D.N.Y. Dec. 18, 2020) Neither case is applicable here, where the record is clearly contested, and Plaintiff has put forward additional evidence to support the pleadings.

As such, Defendant has not adequately demonstrated that it has removed the Access Barriers present on the Website. At best, these assertions represent a denial of the specific, ongoing violations which the FACAC properly pleaded, and were subsequently supported by Mr. Moody's declaration, which should be subjected to the rigors of discovery.

Even setting aside (i) Defendant's improper introduction of its evidence at this stage of the litigation, (ii) the fact that these unsupported and untested assertions are flatly contradicted by the explicit allegations in the FACAC and by the Moody Declaration; and/or (iii) whether Defendant's assertions would withstand the scrutiny of the discovery process, the reliance on a third-party's services and guarantees is not sufficient to moot a case at the motion to dismiss stage. "Where

noncompliance can result from an easily changeable policy, a court cannot simply say that a defendant has made an affirmative showing that the continuing of their alleged ADA violations is nearly impossible." *See De La Rosa*, 175 F. Supp. 3d at 201 ("Given the ease with which defendants could stop providing captioning, we simply cannot say they have made an affirmative showing that the continuation of their alleged ADA violations is nearly impossible").

Defendant has contracted with, and is therefore completely dependent on, an outside application to maintain ADA compliance.  Defendant's mootness arguments are therefore insufficient: should Defendant succeed in on this motion, there is no basis on which to establish that this behavior cannot reasonably be expected to occur. *See Walters v. Simply Skinny Ties, LLC,* 6:20-CV-1026, 2020 U.S. Dist. LEXIS 231047, at *4 (N.D.N.Y., Dec. 9, 2020) (denying motion to dismiss a website accessibility case where "(1) [plaintiff] has established that there is a factual dispute between the parties over whether the website continues to deny him a full and equal opportunity to enjoy the services it provides and (2) [defendant] has not conclusively established that this dispute has been mooted by its voluntary conduct").

But even if Defendant were to continually engage with this online application, its untested extrinsic evidence would also be particularly uncompelling given that the Website is still in violation of the WCAG 2.1 standards and the ADA. Defendant is correct that "it is not disputed that the website includes an accessibility plugin". Def. Mem. at *9. But it is far from undisputed whether this application has remedied the barriers Plaintiff encountered. As attested to in the Declaration of Robert D. Moody, who examined the Website after Defendant's instant motion was submitted, "issues with the website do exist and moreover, those issues are a barrier to individuals with low to no vision." Exhibit B at ¶7. Specific and ongoing barriers found on the Website by Mr. Moody include:

19

- The website contains social media links as an additional source to stay connected with the company. The links lacks proper description. The screen reader would read "New window open," with no other description thus barring the user from any understanding as to what to do with the link.

- Once a product is selected, images are shown of the item. These images are mislabeled. The image lacks any description for the text or alternate text except for "Opens an image" and the product name. The description seems incomplete and a screen reader interpreting this description would most definitely confuse a visually impaired user as to what they are trying to review and/or buy.

- The products offered have different size options. The first option, small, is accessible, but the rest are not labeled to integrate with the screen reader. When navigating with a keyboard, the cursor skips the other options to the add to cart button. Without providing proper information, it would create a barrier for a visually impaired user.

- Once a product is selected, there is text that relays the price, a description of the item, and a sizing chart. All these site functions are not labeled to integrate with the screen reader. The cursor skips this information and navigates to the nearest available link, button, or header.

- While browsing products there is a black promotional banner near the top of the screen relaying "Free Shipping…" and "Free grip…". This information is not labeled to integrate the screen reader. The cursor skips this information and navigates to the main content of the website.

Mr. Moody's report also specifically noted that Defendant's website had an "ADA Accessibility Widget." but nevertheless concluded "It is my expert opinion and with a high degree of scientific certainty the website . . . has defects, can and will continue to create problems for visually disabled persons, such as the Plaintiff and these defects act as a barrier to the effective use and enjoyment of the site for persons with low to no vision." Exhibit B at ¶¶9;14.

Plaintiff's expert has thus identified ongoing Access Barriers inhibiting the equal use of the Website by the visually impaired. As a result, Defendant's extrinsic evidence *at best* presents one set of factual allegations that should be subjected to the rigors of discovery and evaluated by a finder of fact. Indeed, this dispute was deemed sufficient to deny a motion to dismiss on mootness grounds in the recent case of *Josue Romero v Adagio Teas, Inc.*, (20-CV 7422) (JMF), S.D.N.Y

July 7, 2021. A copy of which is annexed hereto as Exhibit C. Judge Jesse Furman ruled that dismissal on mootness grounds was inappropriate because "there is clearly a factual dispute as to whether defendant's website contains the barriers that plaintiff alleges it does. Both sides of submitted affidavits arguing opposite sides of this factual questions. Defendant's defense, therefore, is properly tested in discovery and at summary judgment or trial' Indeed, the competing affidavits 'reinforce the conclusion that discovery is necessary to determine defendant's compliance with the ADA or lack thereof." Exhibit C at p.5:5-14 (citations omitted).

Compounding this dispute over the sufficiency of Defendant's remediation efforts, the accessiBe product is itself subject to considerable controversy and is not the panacea Defendant's motion implies. Indeed, the National Federation of the Blind, a non-party, non-profit organization which advocates for the blind and visually impaired, released a press statement on June 24, 2021, stating that "accessiBe currently engages in behavior that is harmful to the advancement of blind people in society. In particular, it is the opinion of the Board that accessiBe peremptorily and scornfully dismisses the concerns blind people have about its products and its approach to accessibility."[6]

Given that Defendant's assertions concerning whether the barriers have been remedied are disputed by the contents of the pleadings, Plaintiff's expert, and disputes within the disabled advocacy community, Defendant has clearly not met its burden to moot this case.

---

[6]    Accessible at https://nfb.org/about-us/press-room/national-convention-sponsorship-statement-regarding-accessibe; *see also* Gus Alexiou, *Largest U.S. Blind Advocacy Group Bans Website Accessibility Overlay Giant AccessiBe From Its National Convention*, Forbes, June 26, 2021, https://www.forbes.com/sites/gusalexiou/2021/06/26/largest-us-blind-advocacy-group-bans-web-accessibility-overlay-giant-accessibe/?sh=62e539085a15

### B. PLAINTIFF HAS STATED A CLAIM UNDER THE ADA REGARDLESS OF AUXILIARY SERVICES

Plaintiff is not required to plead that Defendant failed to provide an auxiliary aid or service. Discrimination under the ADA includes a failure to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that make such modifications would fundamentally alter the nature of such goods." 42 USC §12182(b)(2)(A)(ii). A plaintiff can demonstrate a valid ADA claim, specifically that "exclusion or discrimination was due to the plaintiff's disabilities", in three ways. These include (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation. *Jones v. Thomas*, 20-cv-5581 (LLS), 2020 U.S. Dist. LEXIS 156016, at *6-*7 (S.D.N.Y. Aug. 27, 2020) (citations omitted)[7]. The first two categories do not require a plaintiff plead that a defendant refused to provide them with an auxiliary aid. *See Thorne v. Formula 1 Motorsports, Inc.*, 19-Cv-1077 (JPO), 2019 U.S. Dist. Lexis 220080 (S.D.N.Y. Dec. 19, 2019), ("specifically, *Thorne* alleges that Formula 1's website fails to provide alternative text for images, uses empty links containing no text, and uses redundant, adjacent links. These allegations, taken as true, plausibly show that Formula 1 discriminated against *Thorne* by denying him a full and equal opportunity to use its website."); *see also Wu Jensen-Lewis Co*., 345 F. Supp. 3d 438, 443 (S.D.N.Y. 2018); *cf. Castillo v Hudson*, 412 F. Supp.3d 447, 450 n.2 (S.D.N.Y. 2019) (Because [plaintiff] does not alleged any auxiliary aid or service that Defendants could provider her, this argument [under 42 U.S.C. §12182(2)(a)(iii)] is unavailing.) As the amended complaint

---

[7]        Notably, these three theories of discrimination concern actions rather than subjective intent. Defendant's assertion that Plaintiff must support its pleadings with additional evidence, such as company policies, which in exclusive possession of the Defendant would render all but the most officious ADA violators immune from the law. Def Mem. at *9, n.4. Defendant is again trying to move the goalposts, arguing Plaintiff must unequivocally prove the allegations true at the pleading stage before discovery has even occurred.

alleges violations of both 42 USC(b)(2)(A)(ii)-(iii), Defendant's citation to the latter statute incomplete and does not address Plaintiff's claims of discrimination for intentional discrimination or disparate impact. ¶¶ 53-54; *cf*. Def. Mem. at *8-*9. Plaintiff was not required to plead the inadequacy of an alleged accommodation, only that he encountered accessibility barriers which prevented him from engaging with a public accommodation due to intentional discrimination or the disparate impact of Defendant's policies.

Defendant further attempts to mischaracterize the auxiliary aid issue as one of Plaintiff demanding the Website be "perfect." Def. Mem. at *8. But this is likewise an attempt to shift the goalposts. A single encounter with an accessibility barrier constitutes unlawful discrimination under the ADA if it impairs a plaintiff's full and equal access. *See Feltenstein v. City of New Rochelle*, 254 F. Supp. 3d 647, 655 (S.D.N.Y 2017) (finding that even where barriers in question have not completely prevented disabled plaintiffs from visiting a public accommodation, to, plaintiffs still have a valid ADA claim when the barriers render their use of the facility more difficult, burdensome, or dangerous, even if they can visit the facility). Courts in the Southern District of New York have like recognized the need to conform to accessibility guidelines, such as the Web Content Accessibility Guidelines ("WCAG"), for purposes of ADA compliance regarding websites. *See, e.g.*, *Markett*, 2017 U.S. Dist. LEXIS 115212 at *5-*6 ("Plaintiff has identified steps that defendant can take to ensure equal access to its website by the blind, such as using Web Content Accessibility Guidelines 2.0"). This is the common standard in this district. *See, e.g., Diaz v. RealReal, Inc.*, No. 19-cv-07423 (LGS), 2020 U.S. Dist. LEXIS 18319 (S.D.N.Y. Jan. 30, 2020); *Nixon v. Komar Layering, LLC*, No. 20-cv-02251 (GWG), 2020 U.S. Dist. LEXIS 136948 (S.D.N.Y. July 29, 2020); *Bishop v. Beachway Operating*, No. 20-cv-00362 (JMF), 2020 U.S. Dist. LEXIS 232419 (S.D.N.Y. July 21, 2020).  WCAG standards have been adopted by federal

agencies, including the Department of Justice, which also uses this standard for many of its own consent decrees and settlements to which the United States has been a party. *See Robles v. Domino's Pizza, LLC*, 913 F.3d 898, n.1 (9th Cir. 2019).  Thus, it is clear that compliance with the ADA requires the Website itself to be clear of accessibility barriers.

Finally, as noted above, Defendant's arguments that it provided auxiliary aids here are particularly unavailing given that Defendant's assertion that its Website is compliant relies on the controversial application accessiBe. As such, Defendant cannot contend that is has provided an auxiliary aid that actually ensures effective and equal access.

## VI.   CONCLUSION

For the reasons set forth above, the Court should respectfully deny Defendant's Motion to Dismiss in its entirety.

Dated: Brooklyn, New York
         September 10, 21

                                        **COHEN & MIZRAHI LLP**

                                        /s/ Joseph H. Mizrahi
                                        Joseph H. Mizrahi
                                        William J. Downes
                                        300 Cadman Plaza West, 12th Floor
                                        Brooklyn, New York 11201
                                        Tel: (929) 575-4175
                                        Fax: (929) 575-4195
                                        jmizrahi@cmlattorneys.com
                                        wdownes@cmlattorneys.com

                                        *Attorneys for Plaintiff*